substituted, and the H. C. Cook Company. From a decision for the latter, the former appeals. Reversed.

H. A. Dodge, of Washington, D. C., and H. M. Holmes, of Boston, Mass., for appellant.

H. E. Rockwell and E. M. Bartholow, both of New Haven, Conn., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. These are trade-mark interference proceedings in which the Assistant Commissioner ruled that appellee was entitled to register the mark "Vise."

Originally Mr. Graff, as the exclusive licensee of the patentee, manufactured and sold paper clips under this trade-mark. In 1910 he sold his good will and business to the Cook Company. That company, failing to make a success of the business, entered into an arrangement with Graff in March of 1911, by which Graff undertook the sale of these clips, the same to be manufactured by the Cook Company. Thereafter, through quite extensive advertising and good business management, Graff built up a very considerable business, not only in these clips, but in other similar devices, all of which were sold under this trade-mark. The Graff Company and the Graff-Underwood Company have succeeded to the rights of Graff.

Early in 1913, Graff wrote the Cook Company, requesting that the clips have stamped thereon "my name, G. B. Graff Co., Boston." The company responded in part as follows: "We agree with you that it would be a good thing to have your name on the Vise clips for these reasons, but in looking over the article and the tools we see no way of getting it there without adding a whole lot to the cost, which is prohibitive. The boxes and containers both have your name and address." A short time thereafter, however, the Cook Company did stamp on the clips themselves the name of the Graff Company, and that practice continued until 1921, a period of about eight years, during which the public had a right to assume that the origin of the goods was the Graff Company, and not the Cook Company.

[1] The object of a trade-mark is to distinguish the goods to which it is applied from similar goods, and identify them with a particular trader or his successors as owners of a particular business. Elgin Nat. Watch Co. v. Ill. Watch Case Co., 179 U.

S. 665, 21 S. Ct. 270, 45 L. Ed. 365; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; 38 Cyc. 678. It has been described as the commercial substitute for a signature, certifying to the genuineness of the goods to which affixed. See Menendez v. Holt, 128 U. S. 516, 9 S. Ct. 143, 32 L. Ed. 526.

[2] In the present case, for about eight years the public was given to understand that the origin or ownership of the goods, to which the mark was applied, was the Graff Company. Under such circumstances, we think the Cook Company is estopped to prevent the continued use of this mark by the Graff Company, provided the mark is so used as clearly to indicate that the product is that of the Graff Company. Under the original arrangement between Graff and the Cook Company, the company had the right to restrict Graff to the mere use of the mark, and, in addition, to insist that the name of the Cook Company appear as the source of the product. This the Cook Company did not do, but, on the contrary, permitted the Graff Company to build up a business upon the reputation of the latter company. Now to permit the Cook Company to register the mark, upon the basis of its exclusive right to use it, would be inequitable and violative of the underlying purpose of the Trade-Mark Act. See Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713.

The decision is reversed.

Reversed.

## In re LEVY.

(Court of Appeals of District of Columbia. Submitted November 12, 1924. Decided December 1, 1924.)

No. 1678.

1. Patents ⬳101—One cannot read limitations into claims broadly stated.

One who states claims before Patent Office in broad language cannot, when thrown into interference, read limitations into them.

2. Patents ⬳101—Patent Office should give claims broadest interpretation of which they are reasonably capable.

Patent Office should give claims the broadest interpretation of which they are reasonably capable.

3. Patents ⬳104—Doubt as to whether claims should be allowed resolved in applicant's favor.

Any doubt as to whether claims should be allowed by Patent Office should be resolved in applicant's favor.

Appeal from ' Commissioner of Patents.

Application by Lucien Levy for patent. From decision rejecting certain claims, applicant appeals. Reversed.

W. R. Ballard, of New York City, and L. H. Sutton, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office rejecting claims numbered 26. to 35, inclusive, in appellant's application. Claim No. 32 is sufficiently illustrative and is here reproduced:

"32. The method of receiving and amplifying high frequency oscillations whereby the incoming energy is utilized to produce oscillations of a different locally predetermined high frequency which are then amplified and the resultant energy utilized to produce oscillations of a second different, locally determined, high frequency, which are then amplified, detected, and indicated."

These claims were copied from the patent to Armstrong, No. 1,342,885, filed February 8, 1919. As the present application was filed August 12, '1918, it is apparent that, if there was interfering subject-matter, the Armstrong patent was inadvertently issued.

[1] The Assistant Commissioner ruled that Armstrong had in mind the employment of *very* high frequency, and he therefore read that limitation into the claims. But, over and over again, we have ruled that claims must be given the broadest interpretation which they reasonably will support, and that a party will not be permitted to narrow his claims to suit the exigencies of a particular situation.. Miel v. Young, 29 App. D. C. 481; Lindmark v. Hodgkinson, 31 App. D. C. 612; Cox v. Headley, 49 App. D. C. 341, 265 F. 981. ' The party who states his claims before the Patent Office in broad language is not in a position, when thrown into interference, to read limitations into them. The reason is obvious. If he has asked too much, he may reform his claims in an appropriate proceeding. When he takes claims broader than his invention, however, he thereby is enabled unduly to harass the public.

The Examiners in Chief, in. their first decision, had no difficulty in finding that applicant's disclosure was sufficiently broad to entitle him to make these claims, and their later decision was based upon a ruling in another case, which they conceived to be in conflict with their earlier decision here. In the earlier decision they said: "The Examiner further holds that the claims, if construed to read on appellant's disclosure, are anticipated by the prior art. However, it appears from the Examiner's answer, as well as from appellant's brief, that some modification of the references at least is essential in order to literally meet the terms of the appealed claims, and it further appears from a comparison of Levy's disclosure with that of Armstrong that their constructions, so far as the claims here under consideration are concerned, are substantially the same, and are inherently capable of the same uses."

In his opinion the Assistant Commissioner said that, "notwithstanding the small change necessary to adapt applicant's apparatus to carry out Armstrong's method, it is believed applicant lacks a disclosure of a conception of that method."

[2, 3] It appearing that the Assistant Commissioner failed to give these claims the broad interpretation of which they reasonably were capable, and that when so interpreted they probably would have been allowable to the applicant, we follow our usual course and resolve any doubt in applicant's favor.

The decision is reversed.

Reversed.

---

## STRAUGHAN v. METROPOLITAN R. CO.

(Court of Appeals of District of Columbia. Submitted November 6, 1924. Decided December 1, 1924.)

No. 4093.

Dismissal and nonsuit &#8658;81(3)—Motions to open up judgment of nonsuit and order refusing to vacate judgment after lapse of 35 years held properly denied.

Plaintiff's motions for writ of inquiry and for judgment of fraud, wherein he sought to open up judgment of nonsuit for want of prosecution and order refusing to vacate such judgment after lapse of 35 years after entry of such judgment and order, held properly denied because of lapse of time.

Appeal from Supreme Court of District of Columbia.

Action by Charles W. Straughan against the Metropolitan Railroad Company. Judgment of nonsuit for want of prosecution. From an order denying his motions for writ of inquiry and for judgment of fraud, plaintiff appeals. Affirmed.