42 C.C.P.A. (Patents)

Donna L. JONES (Kratz), Executrix of the estate of James J. Jones, deceased, Appellant,

v.

Arthur E. KUPRION, Appellee.

Patent Appeal No. 6077.

United States Court of Customs and Patent Appeals.

June 28, 1955.

Rehearing Denied Sept. 15, 1955.

486

J. Matthews Neale, Washington, D. C. (Strauch, Nolan & Diggins, Washington, D. C., of counsel), for appellant.

Callard Livingston, Chicago, Ill. (Ivan P. Tashof, New York City, of counsel), for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention as to the single count in issue to appellee Arthur E. Kuprion.

The interference is between appellee's application, Serial No. 602,201, filed June 29, 1945, and Patent No. 2,482,621 issued to James J. Jones, now deceased, September 20, 1949, on his application, Serial No. 791,847, filed December 15, 1947. Thus, appellee is the senior party. Both the Primary Examiner and the Board of Interference Examiners held that Kuprion was entitled to an award of priority.

The single count in issue originated in a claim of Jones' patent which was copied by Kuprion for the purpose of this interference proceeding.

The count reads as follows:

"A camera for photographically recording the order in which a plurality of contestants cross the finish line of a race course comprising selectively operable means for continuously moving a film through a camera; an exposure slot adapted to cover a narrow field of view containing the finish line of the race course; lens means associated with said slot for forming an image of said field of view on the central area of the film; *and means carried in fixed predetermined relation to said camera and arranged in predetermined relation to said lens means for simultaneously imposing respectively aligned and identified reference markings at spaced intervals along the opposite longitudinal marginal edges* of the film in parallel relation to the image of the finish line formed by said lens means to provide aligned axially spaced pairs of respectively *identified reference markings* adapted for use in constructing a determinative finish line parallel to said image of said finish line and tangent to the leading portion of the images of the contestants photographed on the central area of the film." (Italics added.)

Jones moved to dissolve the interference on the ground that Kuprion "has no right to make the count of the interference because the application Serial No. 602,201 of Kuprion involved in this interference:

"(a) Discloses an inoperative structure.

"(b) Fails to disclose a structure upon which the count of the interference can be read.

"(c) As originally filed, *did not disclose the invention set forth in the count in the 'full, clear concise and exact terms'* required by R.S. 4888 (U.S.C. Title 35, Sec. 33) [1] *and was amended on October 19, 1948, (Amendment C, paper No. 9) after knowledge of the Jones invention was obtained by Kuprion, who there-*

---

1. Now 35 U.S.C. §§ 111, 112.

after entered into an operational and license agreement under the Jones application and patent as shown by the attached copy of the agreement marked Exhibit 1 for identification."

The examiner dismissed the motion to dissolve and stated:

"The party Jones' contention that the invention set forth in the count is not sufficiently disclosed in the Kuprion application as originally filed, is closely related to the question of the operativeness of the Kuprion apparatus. As has been indicated above, no conclusive showing has been made demonstrating that the Kuprion apparatus is incapable of producing a record such as shown in Figure 8 of Kuprion. The Kuprion apparatus, as originally disclosed, fully supports the count of the interference, it being obvious that the record produced by said apparatus is 'adapted' for use in the same manner and for the same purpose as the record obtained by the Jones apparatus. Since testimony on the matter may be useful in resolving any doubts which may exist as to whether or not the Kuprion application discloses the subject matter in issue or is operative, it is deemed advisable to continue the Interference at this time, to permit the taking and proper consideration of such testimony."

Both parties took testimony, filed briefs and were represented at final hearing. However, Jones died on April 10, 1951 which was several months before the taking of testimony in his behalf.

It is stated by Jones that cameras of the type here involved have previously been proposed for producing a photo-finish of a race but that the finish line, which is superimposed on the resulting photograph, cannot be accurately positioned under the prior art methods and with prior art apparatus, and, that as a consequence, much litigation has arisen in which the promoters of the contests have been successfully sued because of improperly positioned finish lines which show the wrong contestant as the winner.

The involved invention as set forth in the count may be briefly described as relating to continuous flow, strip film cameras and means for photographically recording on a film images of the contestants in a race as they cross the finish line, and simultaneously imposing on the film, aligned and identified markings related to the finish line in such a way as to permit accurate determination of the order in which the contestants pass the finish line.

Jones has contended most vigorously before the court, and before the board, that Kuprion's disclosure does not read on the count here in issue, and does not establish either conception or reduction to practice of the issue count.

In the brief for Jones it is stated that the single question raised by this appeal is "Does Kuprion in his application show conception and reduction to practice of the invention of the interference count entitling him to an award of priority or the right to contest inventorship with Jones?"

We think appellant has correctly stated the issue before us. If Kuprion's disclosure reads on the count he is entitled to an award of priority of the invention, otherwise Jones should prevail. Therefore we deem it unnecessary to discuss the many other issues presented to the board.

The count in issue provides for " * * means carried in fixed predetermined relation to said camera and arranged in predetermined relation to said lens means for simultaneously imposing respectively *aligned* and *identified reference markings at spaced intervals along the opposite longitudinal edges* of the film in *parallel relation* to the image of the finish line formed by said lens means to provide *aligned spaced* pairs of respectively *identified reference markings* adapted for use in constructing a determinative finish line parallel to said image of said finish line  *  *  *."

It seems to us that both Kuprion and Jones have means for spacing aligned marks at intervals along the opposite longitudinal edges of the film in parallel relation to the image of the finish line. The camera shown by Kuprion's application photographs the moving contestants on the main central portion of a continuously moving film in a manner similar to that shown by Jones. To provide corresponding markings on the edges of the film Kuprion proposes to photograph the end portions of the actual finish line so that the photographically recorded images of the end portions of the finish line are alternately long and short. The reference markings on the edges of Jones' film are lines of equal length which are identified by numbers from 1 to 9. The numbers appear alternately on every other line so that each line is identified. Those numbered are identified by the numbers and those not numbered are identified as the line between numbers 1 and 2, or between numbers 2 and 3, and so on.

The Jones specification requires that the reference markings be respectively identified and suggests the use of numerals "or the like" for that purpose. It was the opinion of the board that the count "* * * does not appear to require that they be identified in any specific manner, provided they assure accurate construction of a determinative finish line in parallelism to the image of the actual finish line."

We think that any specific manner of identification would satisfy the count.

■ The board correctly held that the count should be given the broadest interpretation which it reasonably will support, citing Scott v. Longtin, 52 App. D.C. 102, 281 F. 606, 1922 C.D. 145. However, in applying this rule the word "reasonably" should not be deleted, Harris v. Henry, 63 F.2d 120, 20 C.C.P.A., Patents, 883, and the crucial language in a count should not be given an unwarranted over-broad interpretation. Words in a count are generally to be given their ordinary meaning in the particular art involved. Clark v. Camras, 204 F.2d 273, 40 C.C.P.A., Patents, 963.

The board held that Kuprion identifies his reference marks by their distinctive length rather than by numerals; that the difference between the reference marks of Kuprion and Jones is one of degree only and that therefore Kuprion's disclosure was deemed sufficient to read on the count. With this we cannot agree.

■ We are of the opinion that the reference marks on the edges of Kuprion's film are not identified within the meaning of the count. There is nothing to identify any of the long reference marks appearing on one edge of the film with respect to each other or with respect to any mark on the other edge of the film. This also applies to the short marks. They are simply a series of alternating long and short marks which are wholly unidentified, and therefore we do not think the count reads on Kuprion's disclosure. The decision appealed from should be and hereby is reversed.

Reversed.

WORLEY, Judge, dissents.