William KAHL, Andrew Davenport, and Philip H. Mudge, Appellants,

v.

Andrew E. SCOVILLE and William R. Davis, Appellees.

Appeal No. 79–553.

United States Court of Customs and Patent Appeals.

Oct. 18, 1979.

Clemens Hufmann, Chicago, Ill., attorney of record, for appellants.

Ralph H. Chilton, Hartford, Conn., attorney of record for appellees, John M. Prutzman and James E. Alix, Hartford, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and WATSON,* Judges.

* The Honorable James L. Watson of the United States Customs Court, sitting by designation.

1. U.S. Patent No. 3,852,592, issued 12/3/74, filed 6/7/73, and entitled "Automatic Door Operator," assigned to The Stanley Works, a Connecticut corporation.

2. Application serial No. 661,093, filed 2/25/76, accorded the benefit of serial No. 458,796, filed 4/8/74, entitled "Self-Contained Presence Detector," assigned to Kawneer Co., Inc., of Niles, Michigan, a Delaware corporation.

3. 37 CFR 1.204(c) is applicable because the interference is between a junior party-applicant and senior party-patentee and the effective filing date of the application is more than three months subsequent to the effective filing date of the patent. It provides in pertinent part:

MILLER, Judge.

This is an appeal from a decision of the Patent and Trademark Office ("PTO") Board of Patent Interferences ("board") which awarded priority of invention of the counts in issue to the senior party-patentee Scoville et al.[1] ("appellees") based on its holding that the junior party-applicant Kahl et al.[2] ("appellants") failed to overcome the effective filing date of the senior party's patent with the showing required by 37 CFR 1.204(c).[3] We reverse and remand.

## BACKGROUND

### Invention

The invention in interference relates to an automatic door operator which uses the combination of a radiant energy emitter and an energy detector, spaced apart from each other, to sense the presence of a person or object and to thereby operate the door. The emitter sends a beam of energy into a certain area, and the detector responds to reflected energy in a certain area. The overlap of these two areas defines a control zone in which energy reflected by an object passing through the zone will be received by the detector which controls operation of the door. Energy reflected outside this zone will not reach the detector.

Count 1 is illustrative:

An automatic door operator comprising a reversible drive including a drive motor

(c) When the effective filing date of an applicant is more than 3 months subsequent to the effective filing date of the patentee, the applicant, before the interference will be declared, shall file two copies of affidavits or declarations by himself, if possible, and by one or more corroborating witnesses, supported by documentary evidence if available, each setting out a factual description of acts and circumstances performed or observed by the affiant, which collectively would prima facie entitle him to an award of priority with respect to the effective filing date of the patent. This showing must be accompanied by an explanation of the basis on which he believes that the facts set forth would overcome the effective filing date of the patent. Failure to satisfy the provisions of this section may result in summary judgment against the applicant under § 1.228. . . .

for powering a door through a door opening and door closing cycle and a traffic responsive control therefor, said traffic responsive control comprising radiant energy emitter means for emitting a divergent beam of radiant energy spanning the path of travel of traffic through the door and radiant energy detector means spaced from said emitter and having an axis of sensitivity disposed transversely of said beam of radiant energy to intersect said beam and define in the intersection thereof a *discrete divergent three-dimensional control zone* for sensing diffuse reflected radiant energy from traffic within said three-dimensional control zone to control the actuation of said reversible drive, said three-dimensional control zone being spaced above the floor along said path of travel of traffic through the door. [Emphasis added.]

*Proceedings Below*

As shown above, appellants' effective filing date was ten months after appellees' effective filing date. The interference examiner found that appellants' initial 204(c) showing was insufficient and issued an order to show cause why summary judgment should not be entered under 37 CFR 1.228.

In response, appellants filed additional affidavits which included a supplemental affidavit by Kahl,[4] along with supplemental corroboration affidavits by Hubbard, Symon, and Jorgensen, which discussed the alleged actual reduction to practice of the invention by Kahl and the corroborators. Exhibits A–D of the Kahl affidavit relate to a strip lens model sensor, which includes one emitter and one detector. The control zone ("COVERAGE") of the strip lens model is illustrated in Figure 3 of Exhibit A:

ELEVATION VIEW

Figure 3

4. Only one of the named appellants, Kahl, filed an affidavit. Apparently this was because a motion under 37 CFR 1.231(a)(4) to remove the names of the remaining appellants from the application will be made if the interference proceeds.

Exhibits E–J of the Kahl affidavit relate to a plastic lens cluster model sensor, which includes two emitters and one sensor. Exhibit J shows the following control zone ("DETECTION SPACE") arrangement for the plastic lens cluster model:

OPTICAL SENSOR BEAM PATTERN : VERTICAL

*Board*

The only deficiency found by the board in appellants' affidavits was that the showing failed to corroborate that the devices tested included a "discrete divergent three-dimensional control zone" as required by the counts. The board said that, although such a zone is illustrated in Exhibit J of the Kahl supplemental affidavit, the affidavits of Symon, Hubbard, and Jorgensen, which relate to the testing of Kahl's devices, failed to corroborate the existence of such a zone; that Hubbard's statement in the first of his supplemental affidavits, concluding from oral and written reports that the plastic lens cluster sensor shown in Kahl Exhibits E through J operated successfully, was inadequate because Hubbard did not witness the tests and could not know firsthand the nature of the control zone used; that Hubbard's statement in a second supplemental affidavit that he witnessed operation of a strip lens model was not sufficient because the zone of the tested device could have been indefinite in length rather than discrete; that Symon's statement that one test was set up with a plastic lens cluster model was inadequate because it was not clear that a control zone as defined in the counts was established, Symon Exhibit C[5] not requiring or disclosing a discrete divergent three-dimensional control zone; and, finally, that Jorgensen adds nothing to define the specific nature of the control zone of the device he tested with Symon.

OPINION

If appellants, in affidavits by themselves and by at least one corroborating witness, have alleged sufficient facts to entitle them "to an award of priority *if* the senior party were to rely only on his filing date and were not to rebut any of the junior party's case," then they have made a sufficient

---

**5.** Which is a picture of the model shown in Exhibit J of the Kahl affidavit without an illustration of the energy beams.

showing under 37 CFR 1.204(c), and the interference is to be declared if the case is otherwise in condition for an interference. (Emphasis in original). *Kistler v. Weber*, 412 F.2d 280, 285, 56 CCPA 1413, 1420, 162 USPQ 214, 218 (1969); *Breuer v. DeMarinis*, 558 F.2d 22, 28, 194 USPQ 308, 313 (Cust. Pat.App.1977); *Golota v. Strom*, 489 F.2d 1287, 1291–92, 180 USPQ 396, 399–400 (Cust.Pat.App.1974). Also, "the burden on [appellants] is not to prove beyond a reasonable doubt, or even by a preponderance of the evidence, but merely to establish a prima facie case." *Schwab v. Pittman*, 451 F.2d 637, 640, 59 CCPA 720, 725, 172 USPQ 69, 71 (1971).[6]

The only faults the board found with appellants' showing relate to the affidavits of the corroborating witnesses. However, as this court stated in *Breuer v. DeMarinis, supra* at 29, 194 USPQ at 314, in connection with a 37 CFR 1.204(c) showing involving copending applications:

> We have frequently stated that a "rule of reason" approach is required in determining the type and amount of evidence necessary for corroboration. *See Mikus v. Wachtel*, 542 F.2d 1157, 191 USPQ 571 (Cust.Pat.App.1976), and cases cited therein. This approach recognizes the realities of technical operations in modern day research laboratories. *Berry v. Webb*, 412 F.2d 261, 56 CCPA 1272, 162 USPQ 170 (1969); *Hurwitz v. Poon*, 364 F.2d 878, 53 CCPA 1502, 150 USPQ 676 (1966).

Therefore, the affidavits of appellants' corroborating witnesses are to be considered with this rule of reason in mind, and, because appellants need only one corroborating witness to establish a sufficient 204(c) showing, we will focus on the affidavit by Symon.

The Symon affidavit states that he has read Kahl's supplemental affidavit and describes the tests he performed on both the strip lens model and the plastic lens cluster model described in Kahl's affidavit. The *only* fault the board found in Symon's affidavit was that he did not establish that a "device was tested having the zone defined by the counts." However, Symon's affidavit specifically refers to Kahl's affidavit when he states that he tested "door sensors of the plastic lens cluster type described in the Kahl Supplemental Affidavit," and Kahl's affidavit contains an adequate description of the control zone. It is, of course, permissible for one affidavit to incorporate by reference a discussion contained in a contemporaneous affidavit. *In re Clarke*, 356 F.2d 987, 991, 53 CCPA 954, 960, 148 USPQ 665, 669 (1966). Because the board specifically stated that the control zone illustrated in Kahl Exhibit J does satisfy the count limitation, its objection to Symon's affidavit is not well taken.[7]

Appellees object to the board's having excused appellants' originally insufficient Rule 204(c) showing and to its consideration of the additional affidavits submitted. However, as correctly pointed out by appellants, excusing an originally insufficient Rule 204(c) showing is a matter within the discretion of the PTO and will not ordinarily be overturned by this court unless there is a clear showing of an abuse of that discretion. *See Cochran v. Kresock*, 530 F.2d 385, 396, 188 USPQ 553, 561 (Cust.Pat. App.1976), and cases cited therein. We note that appellees have not alleged any abuse of discretion.

Appellees argue that the documents attached to Kahl's supplemental affidavit were not shown to have been in existence at or prior to the filing date of appellees' patent application. The answer lies in the nature of a Rule 204(c) showing. Appellants are only required to establish a prima facie case; that is, it is assumed that the allegations in appellants' affidavits are true. Rebuttal by the senior party is not in order at this stage. *See Kistler v. Weber,*

---

6. Once the interference is declared, appellants must prove their case by only a preponderance of the evidence, the involved applications having been copending. *Kawai v. Metlesics*, 480 F.2d 880, 882, 178 USPQ 158, 160 (Cust.Pat. App.1973).

7. Because we have concluded that appellants have made a sufficient showing under 37 CFR 1.204(c) with the Kahl and Symon affidavits, we need not reach the objections the board noted regarding the other affidavits.

*supra.* Therefore, appellees' argument, which is an attempted rebuttal, is premature and cannot be considered until after the interference has been declared.

 Appellees also argue that appellants have not offered proof of conception. However, because appellants have elected to establish their prima facie case by proof of actual reduction to practice of the invention prior to appellees' effective filing date, this argument is not relevant.

The board said that the control zone shown in Kahl's Exhibit A, Figure 3, does not meet the count limitation because "the zone . . . could have been indefinite in length as opposed to discrete." Assuming, *arguendo*, that "discrete" means "of definite length," the zone shown in Figure 3 is discrete because there is shown on the drawing a "RANGE LIMITATION" which makes the zone of definite length. Appellees' argument that the range limitation will vary with the reflection characteristics of the object passing through the zone is another premature attempt at rebutting appellants' case.

In view of the foregoing, the decision of the board is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

REVERSED and REMANDED.